## J. C. McMeans v. The State.

No. 4198. Decided December 12, 1908.

### 1.—Murder—Evidence—Defendant as a Witness—Inquest—Arrest.

Upon trial for murder where the record showed that the defendant had been summoned as a witness at the inquest of the deceased, and there without being sworn made some statements as to his whereabouts at the time of the homicide, there was no error in admitting in evidence defendant's statements thus made, he not having been under arrest at that time.

### 2.—Same—Charge of Court—Implied Malice.

Upon trial for murder where the court charged that malice is also a necessary ingredient of murder in the second degree; that the distinguishing feature however, so far as the elements of malice is concerned, is that in murder in the first degree malice must be proven to the satisfaction of the jury beyond a reasonable doubt as an existing fact, while in murder in the second degree malice will be implied from the fact of an unlawful killing, the same was a correct definition of implied malice.

### 3.—Same—Charge of Court—Murder in Second Degree.

Upon trial for murder where the court charged that if the jury find beyond a reasonable doubt that the defendant shot and killed deceased with a gun with malice aforethought, and they do not find beyond a reasonable doubt that such killing, if any, was with express malice then they will convict the defendant of murder in the second degree; the same was correct, and the complaint that the charge failed to state that the killing must be unlawful was untenable.

### 4.—Same—Charge of Court—Manslaughter.

Where upon trial for murder the evidence did not really raise the issue of murder in the second degree; and further showed that the deceased was a woman and had filed complaint against defendant charging rape upon her, there was no insulting conduct as contemplated by law, and these facts would not constitute a basis for manslaughter.

### 5.—Same—Charge of Court—Confessions.

Where upon trial for murder the issue of defendant's confessions was not raised by the evidence, there was no error in the court's failure to charge on this phase of the case.

### 6.—Same—Sufficiency of the Evidence.

See opinion for evidence although circumstantial which clearly supports a conviction of murder in the second degree.

Appeal from the District Court of Shelby. Tried below before the Hon. S. W. Blount, special judge.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Stephenson & Stephenson,* for appellant.—On question of admitting defendant's statements made at inquest proceedings: State v. Young, 24 S. W. Rep., 1038; Grimsinger v. State, 44 Texas Crim. Rep., 1; 69 S. W. Rep., 583; Kirby v. State, 23 Texas Crim. App., 13;

5 S. W. Rep., 165; Gerick v. State, 45 S. W. Rep., 717, art. 1, sec. 10, bill of rights, art. 7, 70, White's Code ·Crim. Proc.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty-five years confinement in the penitentiary.

The facts in substance show, although circumstantial, that appellant killed deceased, a negro woman, while she was chopping cotton in a field adjoining his own; at least, the circumstances clearly demonstrate this fact, by waylaying her and shooting her. The motive for the crime, from the State's standpoint, was that deceased had made an affidavit charging appellant with the offense of rape upon her.

Bill of exceptions No. 1 shows the deputy sheriff of Shelby County testified, over appellant's objection, as follows: "I went up there to summons him, the defendant, as a witness at the request of the justice of the peace, and I told him that the justice of the peace wanted him down there as a witness. I didn't have any warrant of arrest or anything of that kind and was not authorized to arrest him. I heard a portion of the defendant's testimony down there in answer to questions asked him by the justice of the peace. I was not present all the time he was testifying. I just heard the first two or three questions asked him. The first question asked him was, if I am not mistaken, did he hear the gun fire, and he said he did, and they asked him when and where he was when the gun fired, and he first said he couldn't tell, and he studied a few seconds, and said the best of his recollection he was somewhere about half way in the trail between the cotton house and the house where he lived, and that is as far in the evidence as I heard. The reason I didn't hear any more of it was because two men rode up and wanted to go over into the field where the negro woman fell and asked me to go over there with them."

Furthermore, the witness, B. F. Munnerlyn, justice of the peace, testified as follows: "I sent for appellant as a witness and he testified as such. I asked him if he heard the report of the gun over that way and he said he did, and I asked him where he was at when he heard the report of the ·gun, and he hesitated just a little bit and said he didn't know just exactly where he was at, but then he said the best he could recollect he was somewhere between the cotton house and the house. The cotton house was a little house up in the field. I never was at it, and don't know whether he had his cotton there or not, but I presume he did; and I asked him was there any one with him at the time he heard the report of the gun and he said there was not, and I asked him what he was doing up there and he said he had started to the house after a plow." To all of the

above testimony appellant objected on the ground that he was in the custody of an officer and under arrest, in contemplation of law, and that the defendant at the time of making the statement, if any such statement was made, had not been warned: that he did not have to make any statement at all, and any statement so made might be used against him on the trial of the case concerning which the statement is made; because the testimony so admitted was the testimony of a witness at an inquest trial, and does not show to have been sworn to and subscribed by the witness; because it was irrelevant, illegal, and unjust and calculated to injure the rights of the defendant. The bill of exceptions is approved with this qualification: "There was no evidence showing the defendant was under arrest at the time the evidence showed that he had been sent for by the justice of the peace to testify as a witness at the inquest." There is nothing in the bill and certainly nothing in the light of the explanation of the trial court that showed that appellant was under arrest, but the testimony merely shows that he was summoned as a witness to testify in the inquest trial. The fact that he was not sworn or that the testimony was not reduced to writing would not affect its admissibility.

Bill of exceptions No. 2 shows the State placed B. F. Whitton on the stand, and over appellant's objection, he testified, as follows: "There was an inquest proceeding over the dead body of this negro woman. I was there at the inquest. The defendant was there. I heard the defendant make a statement there that day as a witness in the case. He said he didn't know exactly where he was when the gun fired. Squire Munnerlyn is the officer that held the inquest proceeding; that was on the same day of the killing; it was held right close to where Alice Bell was killed; it was just outside of my field. The body was there." The bill is approved with the same statement as the other, that there was no evidence tending to show that defendant was under arrest at that time. The testimony was clearly admissible. For a discussion of the question as to whether or not defendant was under arrest see Wood v. State, 22 Texas Crim. App., 431, and Boyett v. State, 26 Texas Crim. App., 689. In the last quoted case the evidence shows that defendant, when he made the statement, was confined merely as a sequestered witness, and that, although he was suspected of complicity in the offense, he was not shown to be aware of the suspicion against him. Held not to constitute the custody contemplated by the rule invoked. This case is decisive of the question above set out in the bill of exceptions. The bills of exception do not show any suspicion even on the part of appellant that he thought he was under arrest.

Appellant's second ground in motion for a new trial complains of the following charge of the court: "Malice is also a necessary ingredient of murder in the second degree. The distinguishing feature, however, so far as the element of malice is concerned, is that,

in murder in the first degree malice must be proved, to the satisfaction of the jury, beyond a reasonable doubt, as an existing fact, while in murder in the second degree malice will be implied from the fact of an unlawful killing." The charge had been so repeatedly approved that we do not deem it necessary to discuss it. The same may be said of the third ground of the motion for a new trial in further criticising the charge on implied malice. It has been uniformly held to be an accurate presentation of the law.

The fourth ground of the motion complains of the following charge: "If you find beyond a reasonable doubt that the defendant shot and killed Alice Bell with a gun with malice aforethought and you do not find beyond a reasonable doubt that such killing, if any, was with express malice then you will convict the defendant of murder in the second degree and so say in your verdict." The complaint of the charge is that it does not tell the jury that the killing must be unlawful. The charge is correct.

The fifth ground of the motion complains that the court erred in failing to charge on manslaughter. Under the facts of this case we do not think there is really any murder in the second degree presented, but appellant insists that the issue of manslaughter is presented on the ground of insulting conduct or uttering of insulting words on the part of deceased towards appellant. Appellant was a man and deceased a woman. Deceased had accused appellant, by filing complaint against him, with the offense of rape. These facts would not constitute a basis for manslaughter.

The sixth ground of the motion complains that the court erred in failing to give all the law applicable to the facts in the case, because of the fact that he admitted the statements of the defendant made at the inquest trial, in the following: That the confession shall not be used, if at the time it was made, the defendant was in jail or other place of confinement, unless made in the voluntary statement of the accused taken before an examining court in accordance with law, or be made in writing and signed by him, which written statement shall show that he has been warned by the person to whom the same is made, etc. This issue was not presented in this case.

The last insistence of appellant is, that the verdict of the jury is contrary to the evidence. We think the evidence, although as stated above, is circumstantial, very clearly supports this conviction. Appellant lived on an adjoining farm to the one where deceased was working. His tracks were traced and thoroughly identified up to the scene of the homicide. His gun had been recently fired. He had made divers and sundry threats against the deceased. His contradictory statements as to his whereabouts, his absence from home at the time of the homicide, being seen plowing over in the field a short while before the homicide, the tracks leading from his field to the spot where the assassin stood, and various other cir-

cumstances which we do not deem necessary to detail, show a cold blooded assassination that does not even suggest the issue of murder in the second degree.

Finding the evidence sufficient, the judgment is in all things affirmed.

*Affirmed.*